### UNITED STATES v. READING CO. et al.

(District Court, E. D. Pennsylvania. July 22, 1924.)

No. 1095.

Courts ⬭508(2)—Judgment ⬭701—Decree in federal court on stockholders' rights held res judicata, and suit in state court involving question enjoined.

A decree of a District Court, entered pursuant to directions of the Supreme Court, determining the rights of common and preferred stockholders of a corporation to dividends, inter sese, in a suit in which both classes of stockholders were represented, rendered the matter res judicata, and where the court retained jurisdiction to make any further orders necessary in carrying the decree into effect, preferred stockholders will be enjoined from maintaining a suit in a state court which involves a redetermination by that court of the same question.

In Equity. Suit by the United States against the Reading Company and others. On rule for injunction. Granted.

See, also, 295 Fed. 551.

William Clarke Mason, Charles Heebner, and Ellis Ames Ballard, all of Philadelphia, Pa., for the rule.

Thomas Raeburn White and Henry P. Brown, both of Philadelphia, Pa., contra.

Before BUFFINGTON and DAVIS, Circuit Judges, and THOMPSON, District Judge.

BUFFINGTON, Circuit Judge. During the earlier proceedings in this case, the common stockholders of the Reading Company denied

the right of the preferred stockholders to participate equally with them in what they alleged were profits or earnings of the company, while the preferred stockholders contended that what was then being distributed was not profits or earnings, but corpus in liquidation. This latter view was adopted by this court, and later also by the Supreme Court. In the opinion then filed (273 Fed. 848) we carefully called attention to the precise question, then decided as above outlined, and also to the fact that the question of the distribution of profits was not then involved or decided, our language being (page 851):

"In that connection we deem it proper to say that, under the facts and circumstances before us, the legal question of dividend distribution between different classes of stockholders is not here involved, and on that question we express no present opinion, for the simple reason that we are not dividing profits or earnings."

On appeal to the Supreme Court by the common stockholders (259 U. S. 156, 42 Sup. Ct. 540, 66 L. Ed. 871) they assigned for error, not only that this court had erred in allowing the preferred stockholders to participate in the then distribution, but they also specified that:

"The court erred, in that it did not hold that the holders of the preferred stock of the Reading Company are limited to dividends not exceeding 4 per cent per annum, and no more."

After argument in that court, a reargument was directed, inter alia, on the question "whether compliance with the decree will confer on any one class of stockholders of the Reading Company any benefit to the prejudice of the rights of any other class of stockholders," and in deciding that issue the court entered into a discussion of the rights generally of preferred stockholders under the stock contract existing between them and the company. From its opinion it will be seen the Supreme Court there held (page 177 [42 Sup. Ct. 547]):

"The rights of the common and preferred stockholders of the Reading Company inter sese are to be determined by the organization agreement of 1896. * * * The agreement provided that the preferred stock should be entitled to noncumulative dividends 'at the rate of, but not exceeding, 4 per cent. per annum, in each and every fiscal year, in preference and priority to any payment in or for such fiscal year, of any dividend on other stock. * * * If, after providing for the payment of full dividends for any fiscal year on the first preferred stock, there shall remain any surplus undivided net profits, the board out of such surplus may declare and pay dividends for such year,'" first to the second preferred stockholders, and thereafter to the other stockholders of the company.

Later on it was said:

"Our conclusion that the claim on behalf of the common stockholders is invalid is based on the construction of the words of the agreement itself and hardly needs authority to sustain it."

On the return of the record to this court, and in reliance on the construction thus placed on the original stock agreement, and on the assumption that, as stated by the agreement and restated by the Supreme Court, the preferred stockholders were "entitled to noncumulative dividends at the rate of, but not exceeding, 4 per cent. per annum, in each and every fiscal year," the decree was modified, agreed to, and finally entered; both preferred and common stockholders being represented

and heard before such action was taken. Our decree further provided that:

"Jurisdiction of this cause is retained to supplement, modify, execute, and enforce the third modified plan and this decree, and also for the purpose of making such other and further orders and decrees, or taking such other action, if any, as may be necessary or appropriate in carrying out and enforcing the directions of the Supreme Court of the United States."

This brings us to the present proceeding. The preferred stockholders who bring it were all, through the stockholders' committee, parties to the original proceeding, and some of them were personally represented by counsel, who took part in the proceedings in this court, and on the appeal were heard in the Supreme Court. Without invoking the reserved jurisdiction of this court, noted above, to afford them relief, if so entitled, or obtaining its permission to go into any other court, these preferred shareholders began a proceeding in the state court, in which they sought a decree that, after the payment to all shareholders of the Reading Company of 4 per cent. per annum dividends, the preferred stockholders should be—

"entitled to share equally pro rata in any other or further dividends which may be declared or paid on any stock of the company in and for each year, and that dividends shall be declared and paid out of the earnings of the current and subsequent years in accordance with such construction."

If successful in their attempt, it would give the preferred shareholders this year $1,400,000 at the expense of the common stockholders. To our mind, this matter is res adjudicata as between the parties to the original proceeding, and if allowed to proceed would involve a reexamination and review by the state court of the decree of this court entered in pursuance of the directions of the Supreme Court of the United States.

Consequently a decree will be now entered enjoining them from further prosecution of their proceeding in the state court.